## REAVES *v.* AINSWORTH.

---

CERTIORARI; SPECIAL TRIBUNALS; APPEALS; PRESIDENT OF THE UNITED STATES.

1. The supreme court of the District of Columbia has no power or jurisdiction to grant a writ of certiorari to review the proceedings of a board of examination for promotion and retirement of Army officers, created by the President under the authority of the act of Congress of October 1, 1890 (26 Stat. at L. 562, chap. 1241, U. S. Comp. Stat.

1901, p. 849), Congress having made no provision for a review by the court of the findings of such special tribunal.

2. The acts of a board for the examination of Army officers, created by the President under the authority vested in him by the act of Congress of October 1, 1890, not being final, but subject to the approval or disapproval of the President, are in effect his acts.

No. 1659.    Submitted May 1, 1906.    Decided June 15, 1906.

HEARING on an appeal from an order of the Supreme Court of the District of Columbia, granting a motion to suspend a writ of certiorari theretofore issued, and dismissing the original and amended petitions for the writ.          *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. H. Prescott Gatley* and *Mr. A. S. Bacon* for the appellant.

*Mr. D. W. Baker,* United States Attorney for the District of Columbia, and *Mr. Stewart McNamara,* Assistant, for the appellees.

Mr. Justice DUELL delivered the opinion of the Court:

This appeal is taken from an order of the supreme court of the District of Columbia granting appellees' motion to supersede a writ of certiorari granted *ex parte,* requiring appellees to produce in court certain special orders of the War Department, known as numbers 111, 115, and 186, and all reports of proceedings had thereunder upon the examination of the appellant on the 23d and 24th days of May, 1905, and on the 21st and 23d days of August, 1905, by the board of examination convened by the said orders to determine his fitness for promotion in the Regular Army under the provisions of the act of Congress approved October 1st, 1890.

This writ ran to the appellee, Frederick C. Ainsworth, the military secretary. A motion to quash the writ was filed, and the case came on for hearing upon the petition. The writ of certiorari issued thereon, and the motion to quash said writ was

argued and submitted to the court, with the result that the court (the question of discretion not being considered) granted the motion, holding that the writ of certiorari should be quashed and the petition dismissed.

The appellant, Winslow Hart Reaves, three days later, obtained leave from the court to amend his petition and the writ of certiorari by incorporating in and adding to the title thereof the words, "and William H. Taft as Secretary of War." The petition being amended, and the amended writ of certiorari having been granted, appellees moved to supersede the writ, upon the grounds that the writ was granted improvidently and upon *ex parte* application; that the allowance of the writ would be unjust and contrary to public policy; that the amended petition did not set up facts showing any right of property, title, or interest in petitioner to any alleged office to which he was entitled; that Congress had intrusted to the board of examination, whose proceedings were sought to be reviewed, the decision of matters properly arising before it, and that, said board not being a judicial or inferior tribunal, the court had no jurisdiction to interpose its functions, nor to issue the writ of certiorari to examine its proceedings; that the allowance of the writ and the requirement of a return thereto would embarrass the operations of the military service of the United States and the proper administration of the duties of the War Department, and hinder the enforcement of its discipline and regulations and the discharge of the legally ordained functions of that branch of the government; and that the record sought to be reviewed showed that the petitioner was not entitled to the issuance of the writ, as appeared by a true extract from said record filed therewith. Accompanying the motion to supersede, there was filed the affidavit of the appellee Ainsworth, setting forth that an extract from the record, appended thereto and filed therewith, was a true copy of such part of the record as shows the concluding report of the board of officers convened by special order 111 in its proceedings of May 23d, 1905.

The court, proceeding to the consideration of the original and amended petitions for the writ of certiorari and the motion to

supersede the writ, before the return thereof, ordered (without considering the question of discretion) that the writ of certiorari had been improperly granted, and that therefore it should be superseded, and that the original and amended petitions be dismissed.

The petition upon which the writ was granted set forth that until September 14th, 1905, the petitioner, Reaves, was second lieutenant of the Artillery Corps, United States Army, and was ordered to appear before a board of examination for promotion, convened by special orders numbers 111, 115, and 186; that he was commissioned in the Regular Army February 20th, 1902.

In view of the conclusion to which we have arrived, it is unnecessary to here set forth the voluminous allegations of the petition filed by the appellant, for we are met at the threshold by the question of jurisdiction,—the power of the supreme court of the District of Columbia to issue a writ of certiorari to review the proceedings of the board of examination whose action is here complained of. This board is one created under the authority vested in the President by the act of October 1, 1890 (26 Stat. at L. 562, chap. 1241, U. S. Comp. Stat. 1901, p. 849). Section 3 of the act says: "That the President be, and he is hereby, authorized to prescribe a system of examination of all officers of the Army below the rank of major to determine their fitness for promotion, such an examination to be conducted at such times anterior to the accruing of the right to promotion as may be best for the interests of the service: * * * That, if any officer fails to pass a satisfactory examination, and is reported unfit for promotion, the officer next below him in rank * * * shall receive the promotion: and provided that, should the officer fail in his physical examination, and be found incapacitated for service by reason of physical disability contracted in line of duty, he shall be retired with the rank to which his seniority entitled him to be promoted; but if he should fail for any other reason, he shall be suspended from promotion for one year, when he shall be re-examined, and, in case of failure on such re-examination, he shall be honorably discharged with one year's pay from the Army."

The alleged lack of jurisdiction is founded on the theory that

this board is not a judicial or inferior tribunal, but a special tribunal created under the power vested in the President by Congress, and that Congress did not intend to have the proceedings had under said statute reviewable by the courts, and so made no provision therefor. Section 3 of the act has not, to our knowledge, been the subject of interpretation by the courts, though it has been referred by the Secretary of War to the Attorney General for his consideration and opinion upon one point (21 Ops. Atty. Gen. 385). The Attorney General held that an officer could not be retired by a board of examination without the approval by the President of its finding.

That Congress acted within its constitutional powers when it enacted the statute in question is undoubted. "By article 1, section 8, of the Constitution Congress has power to raise and support armies;" * * * to make rules for the government of the land and naval forces.' * * * Congress is thus expressly vested with the power to make rules for the government of the whole Regular Army and Navy at all times." *Johnson* v. *Sayre,* 158 U. S. 109, 39 L. ed. 914, 15 Sup. Ct. Rep. 773. It is equally true that "all persons in the military or naval service of the United States are subject to the military law." *Ibid.*

Congress, having constitutional authority to provide for the government of the Army, did, by section 3 of the act of October 1, 1890, give to the President certain powers relating to the promotion, and indirectly to the retirement, of officers of the Army; and this appellant, being an officer of the Army, was amenable to such statute. If Congress had the power to provide a system of examinations for promotion, and as an incident thereto for the retirement of officers ordered before said boards of examination, we are of the opinion that it had the power to provide that the acts of the President under authority given him should be final, and not directly reviewable by the courts.

"Congress alone has the power to determine whether the judgment of a court of the United States, of competent jurisdiction, shall be reviewed or not. If it fails to provide for such a review, the judgment stands as the judgment of the court of last resort, and settles finally the rights of the parties which are involved." [*Ex parte Pennsylvania,* 109 U. S. 176, 27 L.

ed. 895, 3 Sup. Ct. Rep. 84.]    We see no valid reason why Congress may not determine, in reference to tribunals of competent jurisdiction to be instituted for determining questions relating to the personnel of the Army and Navy, that their decisions, when made final by the approval of the President, shall not be reviewable through the means of a writ of certiorari.

The statute in terms gives no right of review, and, when we take into consideration the nature of the subject it was legislating upon, many reasons present themselves why such review would, on the whole, be impolitic, and have a tendency to embarrass the discipline of the Army.   If one officer, dissatisfied with the decision of an examining board, has a right to ask to have the proceedings of the board reviewed by means of a writ of certiorari, then of course all others have.   This, it would seem, might soon lead to a demoralization of that branch of the military service.

"When the law has confided to a special tribunal the authority to hear and determine certain matters arising in the course of its duties, the decision of that tribunal within the scope of its authority is conclusive upon all others." *Johnson* v. *Towsley,* 13 Wall. 72, 83, 20 L. ed. 485, 487.

Nor is there anything in the statute, as we read it, which even indirectly suggests that Congress intended to authorize the courts, by writs of certiorari, to review the acts of the President, done under it.   The acts of these examining boards not being final, but subject to the approval or disapproval of the President, they are, in effect, the acts of the President.   It is not to be presumed that Congress considered that the decisions of the President, when called upon to exercise judgment and discretion in the performance of duties devolved upon him, should be reviewable.   That discretion and judgment was confided in the executive branch of the government by the act of Congress in question, and that it had to be exercised by the board of examination, and by the President in approving of any finding the board might make, is too plain for argument.   As was said by Chief Justice Alvey, speaking for the court, in *United States ex rel. Edwards* v. *Root,* 22 App. D. C. 419: "To interpose

in any such case would almost certainly be productive of mischief and confusion in the entire organization. It is a well-settled principle in our jurisprudence and polity of government that the courts cannot substitute their own discretion and judgment for that of the executive department of the government in matters properly confided to it. Each department of government must work in its own proper sphere and jurisdiction."

In the case at bar the board was military in character. It had jurisdiction of the subject-matter and of the person. To review its decision, approved as it was by the President, and in the form sought, would be to establish a most unwise precedent. In *Smith* v. *Whitney,* 116 U. S. 167, 29 L. ed. 601, 6 Sup. Ct. Rep. 570, which was a case where the supreme court of the District of Columbia at general term had held that it had no jurisdiction to entertain a petition, filed by a naval officer, for a writ of prohibition to the Secretary of the Navy and to a court martial convened to try him, and had therefore dismissed it, the Supreme Court did not consider it necessary to decide as to the power of the court to issue the writ, because no case was shown for the exercise of it. The court, however, did say: "The Secretary of the Navy being an executive officer, and not a member of the court martial sought to be prohibited, it is quite clear that his acts concerning the petitioner cannot be the subject of a writ of prohibition. * * * And this court, although the question of issuing a writ of prohibition to a court martial has not come before it for direct adjudication, has repeatedly recognized the general rule that the acts of a court martial, within the scope of its jurisdiction and duty, cannot be controlled or reviewed in the civil courts by writ of prohibition or otherwise." While recognizing that a board of examination is not the same as a court martial, and that a writ of prohibition is quite different from a writ of certiorari, nevertheless we are of the opinion that the decision of the latter should not be reviewed by the United States courts, by writs of certiorari, when it acts within the scope of its authority. That the board of examination acted within the scope of its authority, we think is shown by that part of the record referred to in the

affidavit of appellee Ainsworth. This shows that the board, at its session of May 23, 1905, did not find that appellant was permanently physically incapacitated for service, but only that he was at that time and that there was a reasonable hope of his recovery. Furthermore, it is not alleged that any report of the proceedings of that session was made to the President, or that any order was presented for his approval or disapproval. This being so, we are of the opinion that that board, or another, might thereafter be lawfully convened and appellant sent before it for examination. There is nothing in the section of the act which indicates that Congress intended that, should an officer be found by an examining board to be temporarily incapacitated for service by reason of physical disability contracted in line of duty, he should not at a later date or dates be called before one of these boards for further examination or examinations. Until the President shall approve a finding of one of these boards retiring an officer, the question of further examination, we think, lies within the judgment and discretion of the President and those acting for him. We are therefore of the opinion that the appellant was properly before the board in August, 1905, and that the board had jurisdiction in the premises; and it does not appear that appellant then and there raised the question of jurisdiction. Conceding that the proceedings of the board in August, 1905, was as arbitrary and irregular as alleged, we must bear in mind that its members were presumably not familiar with the niceties of the forms of law; but, as we are not considering the merits of the case, other than to determine the question of the jurisdiction of the board, it is unnecessary to comment upon the acts of the board.

We have examined the case of *People ex rel. Smith* v. *Hoffman,* 166 N. Y. 462, 54 L.R.A. 597, 60 N. E. 187, much relied on by appellant's counsel. In that case it was held that a writ of certiorari, not being prohibited under section 2120 of the New York Code of Civil Procedure, or by the Military Code, was a proper proceeding by which to review a decision of a board of examination having before it a member of the State militia. While the decisions of the court of appeals of the

State of New York are entitled to the highest consideration. they are, of course, not controlling in this jurisdiction; and, where, as in the present case, the facts are different, we cannot presume that, had they this case to pass upon, they would hold that a writ of certiorari would lie to review the decision of an examining board created under authority granted to the President by Congress. We think that the court recognized in their decision a distinction where the "subject is treated with reference to a Standing Army rather than the militia of the various States." At all events, we think there is a marked difference. Where a man enlists in the Regular Army of the United States "his relations to the State and the public are changed." As said in *Re Grimley* (*United States* v. *Grimley*) 137 U. S. 147, 153, 34 L. ed. 636, 638, 11 Sup. Ct. Rep. 54: "While our Regular Army is small compared with those of European nations, yet its vigor and efficiency are equally important. An army is not a deliberative body. It is the executive arm. Its law is that of obedience." If officers dissatisfied with the decisions of army or navy boards before whom they are legally summoned are to be permitted to have a court's review of such decisions, it will not be long before a state of demoralization will soon exist, the effects of which will be far reaching. In civil matters the courts have been slow to review the acts of executive officers, acting within their jurisdiction in matters requiring the exercise of judgment and discretion. They should be, and we think they have been, equally slow in setting up their judgment against that of tribunals provided by law for regulating matters, authorized to be passed upon by military tribunals, composed of military or naval officers who are especially fitted by their training and experience to determine the questions submitted to them. As has been said, "it would therefore be most illogical, to say nothing of the impediments to military discipline which would thereby be interposed, to apply to the procedure of courts-martial [or similar tribunals] those rules which are applicable to another and different course of practice." [*Porret's Case,* Perry, Oriental Cas. 419.]

Being of the opinion that the Supreme Court of the District of Columbia was without jurisdiction to grant a writ of certiorari to review the proceedings of the board of examination referred to in the petition, it follows that its decision suspending the writ of certiorari and dismissing the original and amended petitions should be, and it is hereby, affirmed.    *Affirmed.*